# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| WORLDVENTURES MARKETING, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No.: 4:18-cv-00498 |
| CARLOS ROGERS, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND PRELIMINARY INJUNCTION ORDER

Pending before the Court is Plaintiff WorldVentures Marketing, LLC's Motion for Preliminary Injunction (the "Motion") (Dkt. 3). This matter is before the undersigned pursuant to 28 U.S.C. § 636(c) and the consent of the parties, for the limited purpose of the temporary restraining order ("TRO") and preliminary injunction. After issuing the TRO on July 19, 2018,[1] the Court held a hearing on Plaintiff's request for preliminary injunction on August 1-2, 2018 (the "Hearing"). At the Hearing, both parties were represented by counsel and were given the opportunity to present evidence in support of their respective positions. After the Hearing, the parties submitted additional briefing as follows: Defendant filed a response in opposition to the Motion (Dkt. 23); Plaintiff filed a post-hearing brief in support of the Motion (Dkt. 24); and Defendant filed a supplemental response in opposition (Dkt. 30). Having heard the arguments of counsel and considered the evidence and testimony presented, the Court finds the Motion (Dkt. 3) is **GRANTED**, and a preliminary injunction is entered as set forth below.

---

[1] The TRO is effective until August 30, 2018, at 11:59 p.m. *See* Dkt. 38.

## I. BACKGROUND

Plaintiff WorldVentures Marketing, LLC ("Plaintiff" or "WorldVentures") is a multilevel marketing direct sales company that markets and sells "lifestyle membership products and services" through a network of marketing representatives ("Representatives"). *See* Dkt. 2 at ¶¶ 2; 12. Defendant Carlos Rogers ("Defendant" or "Rogers") was enrolled as a WorldVentures Representative from November 8, 2005, through July 9, 2018. *See* Dkt. 2 at ¶¶ 2, 31. Rogers, individually and through entities he owned (for example, Team Vision Worldwide, Inc.), achieved "high levels of sales and recruitment" within WorldVentures' marketing structure obtaining the highest rank a Representative can obtain, International Marketing Director ("IMD"). *Id.* at ¶¶ 30-31; *see also* Dkt. 1 at ¶ 40. Rogers is now a sales representative for Travalight, LLC d/b/a Xpirient ("Xpirient"), a direct competitor of WorldVentures. *Id.*

WorldVentures alleges that Rogers violated the Lanham Act, 15 U.S.C. § 1125(a), the Defend Trade Secrets Act of 2016, Public Law 114-153 (May 11, 2016), and the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE Chapter 134A, as well as breached his agreements with Plaintiff, tortiously interfered with Plaintiff's existing contractual relationships with WorldVenture Representatives, and engaged in unfair competition. *See* Dkt. 2 at ¶ 1. Plaintiff seeks injunctive and monetary relief, as well as declaratory relief under the Declaratory Judgment Act, 28 U.S.C § 2201. *Id.*

WorldVentures asserts that it has trade secrets and other proprietary and confidential information including its "genealogy" of multilevel marketing networks,[2] list of Representatives,

---

[2] When a Representative solicits others to join WorldVentures as a Representative, a "downline" network of other Representatives is created, and the Representative receives compensation for the sales production of the downline Representatives in accordance with the WorldVentures compensation plan for Representatives (the "Compensation Plan") (*see* Dkt. 2-16). The multilevel marketing network structure is often referred to as the genealogy, tree, or line of sponsorship in the multilevel marketing industry. *See* Dkt. 2-1 at ¶¶ 6-7. The genealogy of a multilevel marketing company is considered one of its most valuable assets. *Id.*

marketing strategy, vendor list, sales information, financial information, etc. *See* Dkt. 3. WorldVentures also asserts that Rogers, as a WorldVentures Representative, received access to WorldVentures' confidential, proprietary and trade secret-protected information, and further, through his high-ranking role as IMD and his leadership position within the WorldVentures marketing structure, Rogers received access to additional confidential information beyond that made available to the typical Representative. *See* Hearing Testimony of Gregg Stephenson ("Stephenson Testimony"). For example, through his participation in WorldVentures' Compensation Plan Committee, Rogers acquired information regarding the structure of Plaintiff's travel packages and "dream trips," geographic areas of strength and growth, pricing and profit margins, compensation structure, and other sensitive information. *See generally* Dkt. 2; *see also* Stephenson Testimony.

After a hearing on Plaintiff's TRO application, the Court issued the TRO on July 19, 2018, in favor of Plaintiff and against Rogers, restraining and enjoining Rogers from, among other things, using Plaintiff's confidential information or trade secrets, soliciting or recruiting Plaintiff's Representatives, and interfering with Plaintiff's business relationships. *See* Dkt. 11. Following the Court's evidentiary hearing on Plaintiff's Motion for Preliminary Inunction (Dkt. 3), the TRO was extended for good cause to August 16, 2018. *See* Dkt. 18; *see also* FED. R. CIV. P. 65(b)(2). On August 16, 2018, the TRO was further extended to August 30, 2018, by the consent of the parties. *See* Dkt. 38.

On August 10, 2018, Plaintiff filed a Motion for Contempt (Dkt. 25) alleging that Rogers violated the TRO by persisting in his efforts to recruit WorldVentures Representatives. *See id*. The Court held a hearing on the Motion for Contempt on August 21, 2018, and thereafter found Rogers in contempt and issued sanctions. *See* Dkt. 45. The Court determined that Rogers had violated the

TRO by directly contacting WorldVentures Representative, Bianca Gathman, and making public posts on Facebook inviting his friends and followers (including current WorldVenetures Representatives) to join his new company. In addition, the Court determined that although Rogers' conduct with regard to his "Charlotte Summer Fest Party" held on July 20, 2018, was not a direct violation of the TRO, his conduct demonstrated bad faith in that Rogers previously made sworn statements about the party in an effort to mislead the Court about the true nature of the party being a recruiting event for Rogers' new business. *See id.*

## II.  LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained. . . ." FED. R. CIV. P. 65(d).

A plaintiff seeking injunctive relief must show:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted;

(3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and

(4) that the injunction will not disserve the public interest.

*Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). The party seeking an injunction carries the burden of persuasion on all four requirements. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003).

Though a preliminary injunction is "an extraordinary remedy," a movant "is not required to prove its case in full at a preliminary injunction hearing." *Nevada v. U.S. Dep't of Labor*, 218 F. Supp.3d 520, 526 (E.D. Tex. 2016) (citing *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987)). Indeed, at the preliminary injunction stage, the Court may rely on evidence that would be otherwise inadmissible at trial, including hearsay evidence, to support the preliminary injunction. *See Sierra Club, Lone Star Chapter v. Fed. Deposit Ins. Corp.*, 992 F.2d 545, 551 (5th Cir. 1993).

### III. ANALYSIS

#### A. INJUNCTIVE RELIEF ELEMENTS

##### 1. Substantial Likelihood of Success on the Merits

To establish this factor, a movant must present a *prima facie* case to support its claims; this does not mean that a movant must prove it is entitled to summary judgment. *See Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009). In this case, the Court finds that WorldVentures has met each of the required elements for issuance of a preliminary injunction based on its claims for breach of contract, misappropriation of trade secrets, and tortious interference with contract.

###### a. Breach of Contract

Under Texas law, "[t]he elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App. 2015) (internal citations omitted). The evidence establishes that in conjunction with his role as a WorldVentures Representative, Rogers entered into various agreements with Plaintiff, including the WorldVentures Representative Agreement (Dkts. 1-1;20-8) and WorldVentures Policies and Procedures (Dkts. 1-2; 20-16) (collectively, the "Agreements").

5

The Agreements acknowledge that as a WorldVentures Representative, Rogers had access to WorldVentures' confidential, proprietary, and trade secret-protected information, and also expressly stated that unauthorized use of such information constitutes a breach of the Agreements. *See* Dkt. 1-2 at §§ 3.1; 3.2.1. The Agreements, among other things, place express restrictions on Rogers' use of WorldVentures' confidential information, trade secrets, or goodwill; recruitment of WorldVentures Representatives other than those he personally enrolled; the sale of competing products or services or the participation in the set up and launch of a competing business; and the use of WorldVentures as a "warm market" for other network marketing businesses. *See* Dkts. 1-1; 1-2.

The evidence establishes that Rogers breached his contractual obligations to maintain the confidentiality of WorldVentures' trade secrets and refrain from soliciting WorldVentures Representatives. Specifically, on July 10, 2018, in direct violation of the Agreements, Rogers attempted to solicit current WorldVentures Representatives to Plaintiff's direct competitor, Xpirient, by targeting his friends and social media followers (including WorldVentures Representatives) on social media websites such as Facebook and Instagram, and by sending text messages to current WorldVentures Representatives, encouraging them to join Xpirient. *See* Dkts. 20-5 at ¶ 27; 2-11.

The evidence also establishes that WorldVentures Representatives Diana Germano, Sam Jones, Jessica Logsdon, Lorenzo Roybal, and Franco Villarreal reported to Plaintiff's Compliance Department that Rogers contacted them in order to solicit them to join Xpirient, in direct violation of Rogers' contractual obligations to WorldVentures. *See* Dkts. 1-5; 20-5 at ¶ 28. Furthermore, the record establishes that after the issuance of the TRO, Rogers continued to proactively solicit specific WorldVentures Representatives to join Xpirient, despite the TRO's prohibition of such

conduct. *See* Dkt. 45. Specifically, Rogers contacted WorldVentures Representative Bianca Gathman ("Ms. Gathman") in an effort to solicit her to join Xpirient. *See id.*; *see also* Dkt. 26-3 at 5. When Ms. Gathman declined Rogers' recruitment efforts, he replied, "Let's talk after Aug 1st WV paid 100k bond for a TRO for 11 days so I cant talk to WV members until Aug 1st." *Id*. Rogers also made public posts on Facebook inviting anyone that could read the public post (including current WorldVentures Representatives) to join his new company, and referring to his current recruitment effort as Team "#TRO." *Id*. As the Court noted, Rogers' flagrant violation of the TRO demonstrated not only Rogers' disregard for the Court and its authority, but further, that an injunction is needed to prevent Rogers from proactively soliciting WorldVentures Representatives in violation of the Agreements. *See* Dkt. 45 at 6. Indeed, Rogers testified at the contempt hearing that he intended to recruit WorldVentures Representatives after the TRO was lifted.

Furthermore, Rogers admitted in his testimony at the Hearing that he is bound by the Agreements:

> Q: I don't mean to confuse you. Let me -- you were -- you as a WorldVentures representative were required to comply with all the terms and conditions that other WorldVentures 7 representatives were required to comply with. Is that what --
> A: Yeah.
> Q: Including the WorldVentures policies and procedures, correct?
> A: Yes, sir.

Dkt. 34 at 172-173. Moreover, the record establishes that Rogers clearly understood the nature of the Agreements with respect to "cross-recruiting," as demonstrated by evidence presented showing that while Rogers was a WorldVentures Representative, he repeatedly reported other

7

Representatives for violations of the same Agreements he now seeks to avoid. *See* Dkt. 20-20. To the extent that Rogers testified that he understood the solicitation prohibitions applied only to existing WorldVentures Representatives, the Court is not persuaded that Rogers reasonably believed that former WorldVentures Representatives are permitted to cross-recruit, but current WorldVentures Representatives are not.

The Court now turns to Rogers' various arguments challenging the validity of the Agreements. As explained below, Rogers' arguments are unavailing. Rogers first asserts that he did not agree to a Representative Agreement. As noted above, however, Rogers admitted he was bound by terms of the Agreements and that he took steps to enforce the Agreements against other WorldVentures Representatives during his time at WorldVentures. "To determine whether the parties formed a contract, the Court relies on the objective standard of what the parties said and how they acted, not on their subjective state of mind." *Bongalis-Royer v. RJ Worldwide, LLC*, 2015 WL 12778846, at *4 (E.D. Tex. 2015). Accordingly, the Court finds that Rogers' testimony and his actions indicate that he agreed to be bound by the Agreements.

Rogers' assertions are also undermined by evidence establishing that, at least at some point during his tenure with WorldVentures, Rogers electronically enrolled his various WorldVentures Representative accounts, and in so doing, agreed to the terms of the Representative Agreement. *See* Dkts. 1 at ¶¶ 27-32; 2-1 at 3; 20-5 at 2; *see also* Dkts. 20-30 (online acceptance of WorldVentures' Terms and Conditions by Rogers' entity, Team Vision Worldwide, Inc.); 20-34 (online WorldVentures Representative Agreement enrollment of Rogers' entity, Rogers Industrial Property, LLC.). "Texas courts have recognized the validity of electronic contracts." *Bongalis-Royer*, 2015 WL 12778846 at *5 (in the multi-level marketing context, recognizing validity of terms and conditions and policies and procedures that require electronic assent through

"clickwrap" process). Moreover, a contracting party "has the responsibility to read an electronically-presented contract, and cannot complain if they do not do so." *Id*. at *6 (further noting that "where the ability to create a [multilevel marketing independent contractor relationship] is contingent on manifesting assent to the Policies &Procedures/Terms & Conditions, and those provisions are readily available and easily accessible by a clearly indicated hyperlink adjacent to the box where a user is requested to manifest assent to linked provisions, a user is capable of manifesting assent to the provisions by using the click-through process regardless of whether the user scrolls through the provisions or actually clicks the hyperlink."). Thus, Rogers' arguments regarding his lack of assent to the Agreements is unavailing.

Rogers also challenges the enforceability of the Agreements by arguing that WorldVentures cannot enforce the Agreements because it owes unpaid commissions to Rogers and/or his entities. Although the amount actually owed to Rogers and/or his entities is disputed, Gregg Stephenson ("Stephenson"), testified that WorldVentures was not in breach of the Agreements due to the "65% Payout Cap" articulated in the Compensation Plan (*see* Dkt. 20-16 at 8). Rogers presented no evidence to rebut Stephenson's testimony. However, even if the Court were to find that WorldVentures breached the Agreements by withholding or delaying commission payments, Rogers is not entitled to avoid his own performance under the Agreements.

Under Texas law, when presented with a material breach, "the non-breaching party must . . . elect between two courses of action—continuing performance under the contract or ceasing to perform." *Henry v. Masson*, 333 S.W.3d 825, 840–41 (Tex. App.—Houston [1st Dist.] 2010). "[A] party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part." *Long Trusts v. Griffin*, 222 S.W.3d 412, 415–16 (Tex. 2006). The record here establishes that Rogers continued in his role as a WorldVentures Representative and

IMD until July 2018, several months after WorldVentures withheld or delayed commissions beginning at the end of 2017. Thus, even assuming that the failure to pay commissions constituted a material breach, Rogers waived his right to avoid performance by treating the Agreements as continuing.

Rogers' argument also fails because the Agreements expressly provide that the non-solicitation provisions shall survive any termination of the Agreements. *See* Dkt. 20-8 at ¶ 18. Although Rogers attempted to argue that prior versions of WorldVentures' policies and procedures permitted Representatives to use confidential information after they left the company, this argument is unconvincing. That former WorldVentures Representatives would be permitted to freely use confidential information to compete with WorldVentures while current WorldVentures Representatives are prohibited from using such information is nonsensical.

At the Hearing, Rogers introduced a purported copy of the 2008 policies and procedures (the "2008 Policies and Procedures") (Dkt. 20-25 at ¶ 4.33). The Court notes that although the authenticity of the document has not been established, even if authentic, the document does not support Rogers' claim that a Representative's obligation terminates when a Representative's relationship with the company ends. Indeed, the 2008 Policies and Procedures provided that "Confidential information may not be used, shared, disseminated directly or indirectly by the Representative without prior written approval to do so from WorldVentures Compliance Department." *Id*. The plain language of the purported 2008 Policies and Procedures, along with Stephenson's testimony that non-disclosure agreements have long been a part of the WorldVentures' Representative Agreement, undermine Rogers' argument in this regard.

To the extent Rogers urges the Court to consider other ancillary issues related to the enforceability of the Agreements,[3] this is beyond the scope of these proceedings. To establish the likelihood of success on the merits, Plaintiff need only present a *prima facie* case to support its claims. *See, e.g., Byrum*, 566 F.3d at 446. The Court finds that Plaintiff has satisfied that burden here with regard to Plaintiff's breach of contract claim.

### b. Misappropriation of Trade Secrets

WorldVentures alleges that Rogers has misappropriated WorldVenture's trade secrets through his misuse of confidential, proprietary, and trade secret-protected information. *See* Dkt. 1 at ¶ 76. WorldVentures also alleges that it has taken careful efforts to maintain the secrecy of its trade secrets. *Id*. at ¶ 77.

"For information to remain a 'trade secret,' the owner of the trade secret must take reasonable steps to maintain its secrecy." *ZeniMax Media, Inc. v. Oculus VR, LLC*, 2015 WL 11120970, at *7 (N.D. Tex. 2015). Although the Court is not required to make this determination at the injunctive relief stage, there is evidence establishing that WorldVentures has taken reasonable steps to maintain the secrecy of its trade secrets, *see id*., by requiring its Representatives and others with whom it does business to sign non-disclosure agreements and bringing suit to enforce such agreements when violations of the same are brought to its attention.[4] As discussed above, the evidence shows that WorldVentures' non-disclosure provision has long been a part of its policies and procedures. However, at the preliminary injunction stage, a plaintiff need not establish that a defendant actually misappropriated any trade secrets; the fact that a defendant is in

---

[3] Among these ancillary arguments are: (1) the contract is illusory; (2) the non-solicitation agreement is over broad and unreasonable; and (3) additional contractual terms were not supported by consideration. *See generally* Dkt. 23.
[4] Contrary to Rogers' assertion that because WorldVentures did not bring claims against other former Representatives, it should be estopped from asserting claims against Rogers (*see* Dkt. 23 at 16-17), the law does not require that WorldVentures bring suit against everyone formerly associated with it in order to now seek an injunction against Rogers.

a position to possibly use trade secrets is sufficient to warrant injunctive relief. *See Evans Consoles Inc. v. Hoffman Video Sys., Inc.*, 2001 WL 36238982, at *9 (N.D. Tex. 2001). The evidence establishes that Rogers is in such a position.

Rogers also argues that WorldVentures' genealogy cannot be a trade secret because the identities of WorldVentures Representatives are heavily publicized by WorldVentures. *See* Dkt. 23 at 15-16. This, however, mischaracterizes the nature of WorldVentures' trade secret with respect to its genealogy. Stephenson testified that the mere identity and rank of a Representative is not a trade secret. Rather, it is the manner in which the Representatives are associated with one another, i.e., the genealogy, that is the trade secret. And, as previously explained, it is the genealogy that is one of the most closely guarded secrets in any multilevel marketing company. *See* Dkt. 2-1 at ¶¶ 6-7. In fact, Xpirient, the company for which Rogers now works, explicitly provides that the genealogy is a protected trade secret. "[F]or a period of five (5) years after the termination or expiration of the Consultant Agreement between you and Xpirient, you shall not . . . [u]se or disclose to any person or entity any confidential information . . . , including the replication of the genealogy in another network marketing company." *See* Dkt. 20-21. Based on the foregoing, Rogers cannot reasonably argue that WorldVentures' genealogy is not a trade secret.

### c. Tortious Interference with Contract

The essential elements of a claim for tortious interference are: (1) a contract existing that is subject to interference; (2) interference that was willful and intentional; (3) the interference proximately caused damage to the plaintiff; and (4) actual damage or loss. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). All of these elements are met here. The evidence establishes that Rogers intentionally induced other Representatives to breach their contracts with WorldVentures by joining Xpirient in violation of their non-competition agreements with the

WorldVentures. As recited above, WorldVentures Representatives Diana Germano, Sam Jones, Jessica Logsdon, Lorenzo Roybal, Franco Villarreal, and Bianca Gathman all reported that Rogers contacted them in order to solicit them to join Xpirient. The evidence also establishes that Rogers has vigorously promoted his relationship with Xpirient on social media, including to friends and social media followers who are WorldVentures Representatives. Furthermore, Rogers testified that he has shown the Xpirient recruitment video to existing WorldVentures Representatives with the obvious goal of inducing these individuals to leave WorldVentures and join Xpirient.

The Court finds *Graham v. Mary Kay*, 25 S.W.3d 749, 753 (Tex App.—Houston [14 Dis.] 2000), directly applicable to the present case. In *Graham*, the court found evidence that a former salesperson in a multilevel marketing company cajoled other salespeople to sell cosmetics to her for resale with knowledge that their contracts with the manufacturer authorized only direct sales to consumers was sufficient to show willful and intentional interference and proximate cause required to support liability for tortious interference claim. *See id*. Similarly here, the evidence shows that Rogers attempted to entice WorldVentures Representatives to leave WorldVentures and join Xpirient in direct violation of their agreements with WorldVentures. These are the same agreements by which Rogers is bound, and thus, he is well aware of the provisions he is inducing others to violate. Accordingly, the Court finds that WorldVentures has made out a *prima facie* showing of its tortious interference claim.

The Court has already addressed Rogers' argument that WorldVentures should be estopped from asserting its tortious interference claims because it did not assert such claims against other former WorldVentures Representatives and need not address it any further here—except to note that WorldVentures asserts it lacked direct evidence of active solicitation by other former WorldVentures Representatives until Scott Ross, a former WorldVentures Representative and

founder of Xpirient, testified to that effect during the Hearing. *See* Dkt. 28-1. These recent revelations notwithstanding, as previously explained, the law does not require that WorldVentures bring suit against everyone formerly associated with it in order to now seek an injunction against Rogers. Accordingly, this argument is without merit.

   **2. <u>Substantial Threat of Irreparable Harm</u>**

Irreparable harm is "harm for which there is no adequate remedy at law." *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). In other words, it is harm that "cannot be undone through monetary remedies." *Burgess v. Fed. Dep. Ins. Corp.*, 871 F.3d 297, 304 (5th Cir. 2017) (quoting *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)). WorldVentures has demonstrated that it is likely to suffer irreparable harm based on Rogers' conduct. Stephenson testified that conduct such as Rogers' has a devastating and irreversible effect on WorldVentures' sales force.

Moreover, as previously explained, to show irreparable harm for misappropriation of trade secrets under Texas law, a movant need show only that "the defendant possesses the trade secrets and is in a position to use them." *First Command Fin. Planning, Inc. v. Velez*, 2017 WL 2999405, at *6 (N.D. Tex. 2017). Additionally, "when a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed." *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 336 (5th Cir. 2013). Absent rare and unusual circumstances "the threatened disclosure of trade secrets constitutes irreparable injury as a matter of law." *Id*.

Here, the evidence establishes that Rogers has already used the confidential information he received as a WorldVentures Representative and IMD to compete with WorldVentures in his new business venture with Xpirient, which is to WorldVentures' detriment and to Rogers' and Xpirient's benefit. As the Fifth Circuit explained, in such circumstances, harm to WorldVentures

as the trade secret holder can be presumed. *See Heil*, 542 F. App'x at 336. Accordingly, WorldVentures has established that it is irreparably harmed by Rogers' conduct.

### 3. Balance of Hardships

The Court also finds that greater injury will be inflicted upon Plaintiff by denial of injunctive relief than would be inflicted upon Rogers by prohibiting him from using information that he is not legally entitled to use, or precluding him from breaching his contractual obligations to WorldVentures, and refraining from tortiously interfering with its existing contracts. The irreparable harm to WorldVentures through the loss of its trade secrets and the continued erosion of its Representative network is outlined above, and any burden to Rogers is lawful and was knowingly agreed to by him. Accordingly, the balance of the harms weighs in favor of issuing a preliminary injunction.

### 4. Public Interest

Finally, the Court finds the issuance of injunctive relief will not disserve the public interest. WorldVentures argues that the issuance of an injunction is in the public interest because it will permit WorldVentures to maintain its trade secrets. The Court agrees. "[I]t is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law." *Bok v. Cobb Sports Designs, Inc.*, 2017 WL 9807335, at *2 (E.D. Tex. 2017) (internal citations omitted). It is likewise in the public interest to enforce valid non-compete agreements. *Brink's Inc. v. Patrick*, 2014 WL 2931824, at *9 (N.D. Tex. 2014). Accordingly, this factor favors issuance of an injunction.

### B. BOND

Plaintiff previously posted bond in the amount of $100,000.00, for the TRO to become effective. After considering the facts and circumstances of this case, the Court finds that no further bond is required at this time.

## IV. CONCLUSION

Based on the foregoing, the Court finds that the Temporary Restraining Order (Dkt. 11), along with the additional restrictions imposed by the Court's contempt order (Dkt. 45), should be converted to a preliminary injunction.

**IT IS THEREFORE ORDERED** that:

1. Defendant Carlos Rogers is hereby restrained and enjoined from:

    a. using any confidential information or trade secret of Plaintiff WorldVentures for any purpose;

    b. using any information in the line of sponsorship, downline activity report or genealogy of Plaintiff WorldVentures for any purpose; interfering with the contracts or agreements by and between Plaintiff WorldVentures and any of Plaintiff WorldVentures' employees, Representatives, vendors, business associates, business consultants, and all other persons or entities in privity with Plaintiff;

    c. soliciting or recruiting Plaintiff WorldVentures' Representatives, or any person who has been a Representative of Plaintiff WorldVentures during the twelve (12) months following the WorldVentures Representative's termination from WorldVentures, for any multilevel marketing or network marketing business opportunity;

    d. interfering with Plaintiff WorldVentures' existing and prospective business relationships with its Representatives and employees;

    e. disparaging Plaintiff WorldVentures or any of its employees, officers, managers, and Representatives; and

2. Defendant Carlos Rogers is hereby restrained and enjoined immediately from directly or indirectly, destroying, altering, disposing of, consuming, tampering with, or in any manner secreting any and all business or personal records, memos, correspondence, emails, letters, electronic communications, electronically stored information, or other paper and electronic documentation or records relating to or referring in any manner to the matters and facts alleged in the Plaintiff's Original Complaint.

3. Whenever Defendant Carlos Rogers communicates via social media for any solicitation or recruitment for any multilevel marketing or network marketing business opportunity, such communication shall include a disclaimer with the following wording: "I am not permitted to solicit or recruit WorldVentures Representative, or any person who has been a WorldVentures Representative during the last twelve (12) months, other than those I personally enrolled." These disclaimers shall be conspicuous and obvious to the average consumer reading the communication.

**IT IS FURTHER ORDERED** that this preliminary injunction order shall remain in effect until dismissal of this suit or further order of the Court.

**IT IS SO ORDERED**.

**SIGNED this 30th day of August, 2018.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE